O’NIELL, Chief Justice.
 

 The plaintiff is appealing from a judgment dismissing his suit on exceptions of no cause of action and no right of action. The judge withheld his ruling on the exceptions —and on other preliminary pleas — until he had heard all of the evidence on the merits of the case. Then he maintained the exceptions, holding also that on the facts there was no merit in the suit.
 

 The principal demand of the plaintiff— the demand on which depend several .incidental demands — is to recover what the plaintiff claims to be his interest as one of the ten heirs in the succession of his mother, Mrs. Josephine Russo Losavio, who died more than fifteen years before the suit was filed. The plaintiff claims that his interest —and the interest of each of his nine brothers and sisters — in the community estate — is one-thirtieth, and that his father’s interest is two-thirds of the estate.
 

 The principal defendant is the plaintiff’s father, Antonio Losavio. The other defendants are the nine brothers and sisters of the plaintiff, and a corporation named Losavio Realty Co., Inc. The suit was- bropght originally by two of the sons and a daughter of Antonio Losavio, namely, Peter and Vincent Losavio and Mrs. Mamie Losavio Camay; but Vincent Losavio and Mrs. Camay afterwards withdrew from the case, leaving only the one plaintiff, Peter Losavio. He filed a supplemental petition, impleading, his brother Vincent and his sister, Mrs: Camay, as'defendants:
 

 
 *15
 
 All of the defendants joined in the exceptions of no cause of action and no right of action, and in the several other preliminary pleas, as well as in the answer to the suit. Although the case was heard and decided on its merits, as well as on the exceptions of no cause of action and no right of action, we find it unnecessary to consider any other defense but the exceptions of no cause of action and no right of action.
 

 In considering the exception of no cause of action, of course we accept the allegations of the plaintiff’s petition as the facts of the case. The exception of no right of action is based upon the fact that the plaintiff, Peter Losavio, disposed of his interest in his mother’s succession before he filed the suit. In considering that exception, therefore, we shall be governed by the evidence on that subject; for it is declared in article 15 of the Code of Practice that a suit can be maintained only by one who has a real and actual interest in the subject matter.
 

 We take up first the exception of no cause of action. The plaintiff’s mother, Mrs. Josephine Russo Losavio, died on the 16th of April, 1928. Several months before she died, that is, on the 3rd of September, 1927, Antonio Losavio organized the corporation named Losavio Realty Co., Inc., and transferred to the corporation all of the real estate belonging to the matrimonial community, and consisting of a suburban subdivision, which had been divided into lots, which then were being sold off from time to time. This real estate constituted nearly all if not quite all of the community property. The capital stock of the corporation consisted of 200 shares, of no par value, and the stockholders consisted of Antonio Losavio who received 198 shares and was made president of the corporation, Peter Losavio, who received one share and was made vice president, and Mamie Losavio Camay, who received one share and was made secretary-treasurer of the corporation. The shares of stock were given as the price of the land which Antonio Losavio transferred to the corporation. At a meeting of the three stockholders and directors of the corporation, held on the day of its organization, a resolution was adopted conferring upon the president, Antonio Losavio, a general power of attorney to manage the business of the corporation. From that day until the date of trial of this case — and perhaps until the present date — the corporation has been engaged in selling lots and buying other real estate.
 

 At the time when the corporation was organized Mrs. Josephine Russo Losavio made a will, bequeathing to her husband the entire disposable portion of her estate, together with the usufruct of the portion reserved to her children. She named her husband as executor of the will. She died leaving ten children; hence the disposable portion of her estate was one-third. Seven of the children were minors at the time of
 
 *16
 
 their mother’s death, but Pete'- Losavio was not one of the seven. About three months after Mrs. Losavio died her husband caused her succession to be opened and her will probated, and was confirmed as natural tutor of the seven minor children, and as testamentary executor.
 

 Soon afterwards Antonio Losavio obtained an ex parte judgment recognizing him and his ten sons and daughters to be the owners of her estate, which consisted of her half interest in the capital stock of the Losavio Realty Co., Inc.
 

 It is alleged in the plaintiff’s petition— and for the purpose of passing upon the defendants’ exception of no cause of action we accept the allegation as true — that a few days before Antonio Losavio organized the Losavio Realty Co., Inc., and transferred the community property to the corporation, he was informed by his physicians that his wife was fatally ill and could not live longer than a few months; hence- it is alleged, and for the purpose of passing upon the exception we accept the allegation to be true, that Antonio Losavio’s purpose in organizing the corporation and in transferring the community property to the corporation was to retain the management and control of the property after his wife’s death. The exception of no cause of action is founded upon the failure of the plaintiff to allege any fact which would constitute fraud on the part of his father in that respect. The plaintiff contends that the mere organizing of the corporation and transferring of the community property to the corporation, in anticipation of Antonio Losavio’s wife’s death, constituted fraud on his part.
 

 In support of that contention the plaintiff cites and relies upon the case of Wainer v. Wainer, 1946,
 
 210
 
 La. 324, 26 So.2d 829. But the decision in that case does not support the contention of the plaintiff in this case. In the Wainer case the father, in anticipation of his wife’s death, organized two corporations, to one of which he transferred a commercial business of dealing in furs, and to the other of which corporations he transferred all of the real estate belonging to the matrimonial community existing between him and the mother of his three minor children. Soon after the death of Mrs. Wainer, the husband liquidated the two corporations and took over in his own name all of the property, the fur business, and all of the assets theretofore belonging to the two corporations, and disposed of all of these properties for his own use and advantage and without rendering any account whatever to his children. After the children arrived at the age of majority they instituted the suit against the father for an accounting of their share of the community property, of which he had despoiled them. It is true that in that case the court dealt with each of the two corporations as a “corporate fiction”. But it was explained in the opinion rendered in the case that the court was not dealing with the, title to or 'ownership of the properties but was , en
 
 *17
 
 deavoring merely to fix the value thereof in order to determine the amount for which Wainer was indebted to his three children. The fraud which was imputed to the defendant, Wainer, consisted not in the organizing of the two corporations and the transferring of the community property to them, but consisted of his subsequently liquidating the corporations and appropriating all of their assets to his own use and benefit, and of his failing to open the succession of his wife, or to render any account to his children of her interest in the two corporations, both of which were in existence at the time of her death.
 

 The difference between the Wainer case and the present case is that in the present case there was no fraud committed by the plaintiff’s father, or concealment from the plaintiff of any of the community property. It is admitted in the plaintiff’s petition that his father promptly opened the succession of the plaintiff’s mother, and was confirmed as tutor of the seven minor children and as executor of his wife’s will, and that he had an inventory made of the capital stock belonging to the succession of the plaintiff’s mother. It is true the plaintiff charges that the organizing of the corporation, called Losavio Realty Co., Inc., and the transferring of the community property to the corporation was fraudulent; but no fact is alleged that would make the transaction fraudulent. The allegation that the transaction itself constituted fraud is, of course, merely a conclusion of law on the part of the plaintiff, and is in our opinion an erroneous conclusion. In this connection we cannot overlook the admission in the plaintiff’s petition that he was one of the three organizers of the corporation and one of the three directors, and was vice president of the corporation from the time of its organization for a period of several years, at least until July 1, 1930, on which date he sold to his father his interest in the succession of his mother.
 

 This brings us to a consideration of the defendants’ exception of no right of action, which is founded upon article 15 of the Code of Practice; that is, that the pliantiff had no interest in the succession of his mother at the time when he brought this suit. The exception is based upon a receipt which the plaintiff signed and delivered to his father on July 1, 1930, and which is copied in the plaintiff’s petition, thus:
 

 “Baton Rouge, Louisiana,
 

 “July 1, 1930.
 

 “I hereby acknowledge payment of my entire interest in the succession property left by the deceased, my mother, Mrs. Josephine Russo Losavio, who died April 16, 1928. My entire interest in the said community property, nine hundred eighty five dollars and forty cents ($985.40) has been this day paid me cash in hand by my father.
 

 “(Signed) Peter Losavio
 

 “Attest;
 

 “(Signed) Kemble K. Kennedy “John Laicano”
 

 
 *18
 
 Although the plaintiff in his petition acknowledges that he signed this receipt and delivered it to his father on the date stated, he undertakes to avoid the effect of it by pleading, first, that he did not receive the $985.40, or any part thereof, and hence that the instrument was a mere simulation; second, that the receipt is without effect because it contains no description of the property belonging to the succession of his mother; third, that the consideration stated in the instrument would not be an adequate or a serious consideration for. his interest in the succession of his mother, which, he avers, was worth several thousand dollars at the time of his signing the receipt; and, finally, that the fiduciary relationship between the plaintiff and his father was such that the father could not purchase the plaintiff’s interest in his mother’s succession, especially without making a full disclosure of the value thereof.
 

 The plaintiff’s testimony, that he did not receive the $985.40, or any part of it, from his father, is contradicted by the testimony of the two subscribing witnesses. One of them was at the time, a law student at Louisiana State University, and is now a prominent member of the bar. He testified that Peter Losavio brought the receipt to him, in a drug store, near the university, and there requested him and John Laicano to sign the receipt as witnesses. Both witnesses testified that the then law student read the receipt aloud in the presence of Peter Losavio and asked him if he had re-ceived the $985.40. Both witnesses testified that Peter Losavio’s reply was, or implied, that he had received the $985.40;. and both witnesses testified that Peter Losavio then signed the receipt in their presence. That testimony is corroborated by that of Antonio Losavio and by that of the woman whom he was about to marry at the time, and by that of her son, and by that of another witness, who, as far as the record shows, was a disinterested witness. In order to conclude from all of the evidence on this subject that Peter Losavio did not receive the money we would have to accept his testimony as prevailing over that of the six other witnesses on this subject. Aside from the fact that Peter Losavio’s testimony stands alone on this subject, it is in a measure discredited by the fact that, when he went into bankruptcy in February 1932, he did not list among his assets an interest in the Losavio Realty Co., Inc. It is true that a short time before he instituted this, suit, he had the bankruptcy proceedings reopened and listed as an asset an interest in his mother’s succession, and then paid the debts from which he had been discharged. But that belated proceeding on the part of Peter Losavio, in our opinion, came too late to offset the effect of his original omission to list among his assets an interest in the Losavio Realty Co., Inc. Our conclusion from all of the evidence on this subject is that Peter Losavio did receive the cash consideration for which he gave the receipt.
 

 
 *19
 
 His alternative plea, that the receipt is null because it does not contain a description of the property which belonged to his mother’s succession is not well founded. It was sufficient to describe the property as “my entire interest in the succession property left by the deceased, my mother, Mrs. Josephine Russo Losavio, who died April 16, 1928.” The “succession property” consisted of Peter Losavio’s mother’s half interest in the capital stock of the Losavio Realty Co., Inc.
 

 Plaintiff’s third plea, that the consideration stated in the receipt, $985.40, would not have constituted a “serious consideration,” is also without merit. At the time of the death of the plaintiff’s mother, the interest of each one of the ten heirs was appraised at $981.58. That appraisal was made only two years before the date of the receipt in question, and was made by two trustworthy and qualified appraisers. In fact the plaintiff admits that the two appraisers were bankers residing in Baton Rouge, and he makes no attack upon their integrity or upon their qualifications as appraisers.
 

 The plaintiff’s fourth and final plea, concerning the fiduciary relation between him and his father, has reference to the fact that the father had full control of the affairs of the Losavio Realty Co., Inc., as president and as manager under authority of the power of attorney which had been granted to him. There was nothing to prevent che plaintiff, as a director and an officer of the corporation, to obtain as much information as his father had ■ concerning its affairs; and there is no proof that the plaintiff’s interest in the corporation or in the succession of his mother was worth more than the $985.40, which he received.
 

 Our conclusion is that the judge of the district court was right in maintaining the exceptions of no cause of action and no right of action.
 

 One of the demands contained in the plaintiff’s petition is for the enhanced value of two certain lots, owned by the Losavio Realty Co., Inc., on which the plaintiff .claims that he constructed certain improvements. It is conceded by counsel for the plaintiff that that demand is incidental to the demand for a partition of the real estate which plaintiff contends belongs to his mother’s estate, and that the demand for the partition is incidental to, and dependent upon, the plaintiff’s main demand, i. e., that the family corporation should be ignored and that the property now standing in the name of the corporation should be treated as belonging to the estate of his deceased mother. Since we are maintaining the ex>ceptions of no cause of action and no right of action with regard to this main demand, we cannot consider the incidental demands in this suit. But we shall reserve to the plaintiff the right to bring a separate action to recover the enhanced value of both or either of these lots due to any improvements which he may have placed upon them in good faith. :
 

 
 *20
 
 The judgment maintaining the exceptions of no cause of action and no right of action, and dismissing this suit, is affirmed, reserving to the plaintiff whatever right of action he may have against the Losavio Realty Co., Inc., for the enhanced value of Lot 22, Square 1, of Campanile View, and Lot 13, Block 1, of Campanile View, in the Parish of East Baton Rouge, resulting from the improvements which have been constructed on these lots, or either of them. The costs of this suit shall be borne by the plaintiff.