145 So.2d 11 (1962)
243 La. 498
CHRYSLER CORPORATION
v.
CITY OF NEW ORLEANS.
No. 46021.
Supreme Court of Louisiana.
June 4, 1962.
Dissenting Opinion June 19, 1962.
Rehearing Denied October 3, 1962.
*12 Alvin J. Liska, City Atty., Ernest L. Salatich, Asst. City Atty., for defendant-appellant.
Chapman L. Sanford, Baton Rouge, for amicus curiae.
Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice, Kathleen Ruddell, U. S. Atty., Peter E. Duffy, Asst. U. S. Atty., for the United States.
Milling, Saal, Saunders, Benson & Woodward, David J. Conroy, Guy C. Lyman, Jr., New Orleans, for Chrysler Corp.
SANDERS, Justice.
This is a suit by Chrysler Corporation to recover use taxes and interest in the sum of $546,517.35 paid to the City of New Orleans under protest. The United States intervened in the suit and prayed for judgment in favor of Chrysler. The district court originally sustained an exception of no cause of action filed by the City and dismissed the suit. On appeal to this Court, we reversed the judgment and remanded the case for trial. See Chrysler Corporation v. City of New Orleans, 238 La. 123, 114 So.2d 579.
On remand the City filed an exception of want of interest on the ground that Chrysler had been reimbursed by the United States for all taxes paid and, hence, was without interest in the subject matter of the litigation or right of action.
The district court overruled the exception and, after trial, rendered judgment in favor of the plaintiff as prayed for. This appeal by the City followed.
In 1951 the United States leased the Michoud plant at New Orleans to *13 Chrysler for the production of tank engines. Under a facilities contract with the government, Chrysler undertook to modify, equip, and adapt the plant to produce these engines. The use taxes collected from Chrysler by the City were on the use of tangible, personal property imported by Chrysler from outside the City for installation in the plant.
The pertinent provisions of Ordinance 15, 201 C.C.S. as amended, under which the assessment was made, are as follows:
"* * * Section 1. * * * That the following words, terms, and phrases when used in this Ordinance have the meanings ascribed to them in this section, except when the context clearly indicates a different meaning.
"(e) A `Retail Sale', or a `sale at retail,' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and a sale of services, as herein set forth * * *.
"(l) `Use' means and includes the exercise of any rights or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business.
* * * * * *
"(p) `Tangible personal property' means and includes personal property which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses. The term `tangible personal property' shall not include stocks, bonds, notes or other obligations or securities.
"Section 2. That there is hereby levied from and after January 1, 1941, for general municipal purposes a tax upon the sale at retail, the use, the consumption, the distribution, the distribution and the storage in this City, of each item or article of tangible personal property, as defined herein, and upon the lease or rental of such property and the sale of services, within the City of New Orleans; the levy of said tax to be as follows:
* * * * * *
"(b) At the rate of one per cent (1%) of the cost price of each item or article of tangible personal property when the same is not sold, but is used, consumed, distributed, or stored for use or consumption in this City; provided there shall be no duplication of the tax.
"Section 3. That the aforesaid tax at the rate of one per cent (1%) of the retail sales price, as of the moment of the sale, or one per cent (1%) of the cost price, as of the moment of purchase, or one per cent (1%) on sales or services, as herein defined, as the case may be, shall be collectible from all persons, as defined herein, engaged as dealers, as hereinafter defined, in the sale at retail, the use, the consumption, the distribution, and the storage of tangible personal property, and the sale of service, as herein defined. * *
"The term `dealer' is further defined to mean every person, as used in this Ordinance, who imports, or causes to be imported, tangible personal property from any State, or other political subdivisions of this State, or foreign country for sale at retail, for use or consumption, or distribution, or for storage to be used or consumed in this City. * * *
"On all tangible personal property imported, or caused to be imported, from other states or other political subdivisions of this State, or foreign country, and used by him, the `dealer', as thus defined, shall pay the tax imposed by this Ordinance on all articles of tangible personal property so imported and used, the same as if the said articles had been sold at retail for use or consumption in this City. For the purpose of this Ordinance, use, or *14 consumption, or distribution, or storage of tangible personal property, shall each be equivalent to a sale at retail, and the tax shall thereupon immediately levy and be collected in the manner provided herein, provided there shall be no duplication of the tax in any event.
"Section 15. * * *
"(a) A Right of action is hereby created to afford a remedy at law for any dealer aggrieved by the provisions of this ordinance; and in case of any such dealer resisting the payment of any amount found due, or the enforcement of any provision of such laws in relation thereto, such dealer shall pay the amount found due by the Commissioner and shall give the Commissioner notice, at the time, of his intention to file suit for the recovery of the same; * * *" (Emphasis ours.)
The record discloses that the title of the property at no time vested in Chrysler, but passed directly from the various vendors to the United States. Chrysler paid the taxes on instructions of the United States government under a reimbursement agreement. The United States fully reimbursed Chrysler prior to the institution of this suit and is ultimately entitled to the money if it is recovered. Hence the exception of want of interest stands at the threshold of the case.[1]
For a right of action under this ordinance, a party must be aggrieved. A pecuniary interest is essential.[2] As we stated in our previous decision herein, the "use" embraced by the ordinance is the exercise of a right or power over property incident to ownership. The tax is imposed upon the owner. In the instant case the owner was the United States. Chrysler paid the tax under instructions of the United States government with attendant reimbursement. Moreover, the United States is ultimately entitled to the money if it is recovered. Under these circumstances, Chrysler does not have the requisite interest to maintain this action.
The present case falls within the principle of Krauss Company v. Develle, 236 La. 1072, 110 So.2d 104. In that case Krauss Company sought to recover sales tax paid to the City of New Orleans on merchandise which it had sold. The district court dismissed the suit. In affirming the judgment this Court stated:
"It appears that the basis of the lower court's finding was the fact that the plaintiffs were not aggrieved within the intendment of Sections 56-96 and Sections 56-97 of the Code of the City of New Orleans because the amounts paid to the city by the plaintiffs as taxes were collected from and passed on to the consumers by the plaintiffs.
"The plaintiffs contend that they are specifically given a right to institute these suits under the provisions of Section 15(a) of Ordinance No. 15, 201 C.C.S., as amended, which provides:
"`Right of action is hereby created to afford a remedy at law for any *15 dealer aggrieved by the provisions of this Ordinance; * * *'
They take the position that they are aggrieved within the meaning of this provision of the Ordinance. While, on the other hand, the city takes the position that the tax was not imposed on the plaintiffs but upon the purchasers, that they alone had a direct remedy for the refund of such taxes, and that since the plaintiffs are not taxpayers they are without interest to sue for a refund of money that does not belong to them. The city says that the plaintiffs are merely acting in the capacity of agents for the city in the collection of the tax.
"Neither counsel for the plaintiffs nor the defendant has cited any decision of this Court involving the issue raised herein and we are unable to find any decision wherein such question was posed in this state. However, the decision in the case of Kesbec, Inc. v. McGoldrick, 278 N.Y. 293, 16 N.E.2d 288, 119 A.L.R. 536, wherein the same question was involved seems to be well founded and should be accepted by this Court. In that case the court held that a dealer in gasoline could not recover a refund of taxes on gasoline collected by it from consumers under a city regulation because it had no beneficial interest since the tax was not imposed upon the dealer but fell upon the consumer."
The fact that the United States as an intervenor prays for judgment in favor of Chrysler is of no moment. This does not convert the suit into one by Chrysler for the use and benefit of the United States. The intervention either stands or falls with the main demand. Since the main demand must fall, the intervention falls with it. Holley v. Butler Furniture Co., 217 La. 8, 45 So.2d 747; Erskine v. Gardiner, 162 La. 83, 110 So. 97.[3]
In support of its position, Chrysler relies upon the decision of this Court in Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571. In that case Bel Oil Corporation and Calcasieu Paper Co. sought to recover gas gathering taxes paid under LSA-R.S. 47:1576. Under a contract Calcasieu had reimbursed Bel, the gas gatherer, for the taxes. This Court maintained Bel's right to bring suit for a refund and maintained an exception as to Calcasieu on the ground that "any liability of the Paper Company for the tax arose under its private agreement and not under any provision of the statute." In that case the statute imposed the tax only on the gas gatherer, Bel; whereas in the present case the ordinance imposes the tax on the owner, not Chrysler but the United States. Hence that case is distinguishable.
For the reasons assigned the judgment of the district court overruling the exception of want of interest filed on behalf of the City of New Orleans is reversed; the exception of want of interest is maintained; plaintiff's suit is dismissed at its cost; and the intervention of the United States of America is dismissed at its cost.
HAMITER and SUMMERS, JJ., dissent with written reasons.
HAMITER, Justice (dissenting).
I am unable to agree with the conclusion reached by the majority.
The position assumed by the defendant City of New Orleans under the exception of want of interest, and adopted by this court, is totally inconsistent with its initial levying and enforced collecting of the tax. The sole basis for the levy, as pointed out in our opinion on the exception of no cause of *16 action directed to the petition (see 238 La. 123, 114 So.2d 579), was that plaintiff had exercised rights of ownership to the equipment involved. And in arguing in support of that exception the City urged that the contract between Chrysler Corporation and the United States government created a quasi-ownership of such property in plaintiff. Also, in the answer, filed prior to tendering the instant exception, the defendant specifically denied all of plaintiff's allegations that it was not the owner. Accordingly, I am of the opinion that the defendant should not in good conscience now contend, and it is error for this court to hold, that such lack of ownership by plaintiff precludes its recovering the tax which it was compelled to pay (on the City's insistence that it did own the property). To allow the defendant under the exception of want of interest to defeat recovery of the illegally collected tax, after its having challenged facts which if admitted in the first instance would have prevented the enforced collection thereof, is to permit that municipality to unjustly enrich itself at the expense of another in violation of Revised Civil Code Article 1965.
Krauss Company, Limited v. Develle, 236 La. 1072, 110 So.2d 104, relied on by the majority, is not applicable or analogous. That case dealt with a sales tax which the plaintiff merchant was compelled under the terms of an ordinance to collect from its customers. Consequently, we reasoned that the vendor was merely a collector and had no beneficial interest in the validity of the tax. As we said therein the "tax was not imposed upon the dealer but fell upon the consumer." Involved here, on the other hand, is a use tax; and it was imposed on Chrysler Corporation, not on the United States government for which the equipment was purchased and installed. Incidentally, the City was unconcerned with whether Chrysler, because of contractual undertakings with another, might be reimbursed for the amount of the tax if due and paid by it. Too, Chrysler's only remedy, with respect to the City, was to pay the tax under protest and then to seek its return. Clearly such remedy, specifically granted by the ordinance, could not be affected by an agreement between plaintiff and the government as to which should ultimately bear the tax indebtedness if found to be due.
Most important, if the City's position under its exception of want of interest be correct then no one can recover the illegally collected tax involved here. Certainly the United States government cannot, because it has not paid any tax under protest. Indeed, based on that theory the City (at the time of tendering the instant exception) filed exceptions of no right and no cause of action to the government's intervention.
I respectfully dissent.
SUMMERS, Justice (dissenting).
The city's position is that the right of action for refund of taxes paid under protest vests solely in the person whom the statute places the tax against and who pays the tax, and the right of action for refund cannot be delegated to a third person.
Chrysler contends that its action for refund is properly brought as it is a taxpayer in accordance with the provisions of Article X, Section 18 of the Louisiana Constitution of 1921, LSA, Act 330 of 1938, LSA-R.S. 47:1576, 47:2110 and Section 15(a) of Ordinance No. 15, 201, C.C.S., referred to in the majority opinion.
Under the facts of this case the city, asserting that the tax was placed against Chrysler, demanded payment of the taxes from Chrysler, not the United States. Chrysler, not the United States, paid the taxes under protest; Chrysler gave notice of its intention to file suit for recovery, not the United States; and Chrysler did in fact file this suit within the allotted time after payment under protest. Thus, all of the requirements for instituting suit pursuant to Section 15 of Ordinance No. 15, 201, C.C. S., were met by Chrysler.
I am of the opinion that the cause of action for refund of the tax arose at the moment *17 of the payment by Chrysler, and the rights thus created were vested, and should govern the disposition to be made of this suit for refund. I fail to see how reimbursement to Chrysler by the United States could alter these rights, and particularly in such a manner that no one could sue for the refund, which is the result of the majority opinion.
It is true that this court's decisions in this case on two occasions238 La. 123, 114 So.2d 579, and the majority opinion now under considerationfound the tax was improperly collected from Chrysler inasmuch as the use of the property was not an incident of their ownership. In other words the tax was not properly placed against Chrysler, although they did pay it. The majority holding results in the strange anomaly that, although the tax was collected from Chrysler erroneously because Chrysler paid the tax under protest with money received from the United States under its facility contract, Chrysler cannot recover the taxes because these taxes were not properly placed against Chrysler.
I understand the majority holding to mean that if reimbursement were not involved there would be no question about Chrysler's right to succeed in this case.
I am of the opinion that a contract between a taxpayer and another, whereby the taxpayer is reimbursed the taxes paid and is obliged to seek recovery for the benefit of the indemnitor, does not and cannot operate to deprive the taxpayer of his right to proceed under Section 15 of the ordinance. Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571.
The Krauss Company case relied upon by the majority is effectively distinguished by Mr. Justice HAMITER in his dissenting opinion.
Furthermore, the majority opinion fails to dispose of the city's reconventional demand against Chrysler as the taxpayer for penalties, audit costs and attorney's fees.
I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
In a joint application for a rehearing, plaintiff Chrysler Corporation, and intervenor, United States of America, are still contending that, under our decision in Bel Oil Corporation v. Fontenot, 238 La. 1002, 117 So.2d 571, Chrysler has a real and actual interest to recover the taxes it paid under protest despite the fact that it has been fully reimbursed by the United States government for the taxes it paid the City of New Orleans. In view of the earnestness of their industrious counsel, we have reexamined our opinion in Bel Oil Corporation v. Fontenot and conclude that it is without application to this case.
In that matter, Bel Oil and Calcasieu Paper Company, Inc. brought suit to recover gas gathering taxes assessed against Bel Oil, which were paid by Bel under protest, contending that the statute under which the tax was levied was unconstitutional. The defendant, Collector of Revenue, filed an exception of no right of action to the claim of Calcasieu Paper Company and this exception was sustained by the district judge on the ground that Calcasieu, notwithstanding its reimbursement of Bel for the taxes assessed against the latter, was not the taxpayer and, therefore, had no right to proceed against the Collector for taxes paid by Bel. Bel's right of action to maintain the suit was not even questioned nor was it an issue in the case, either in the lower court or on appeal.[1] Consequently, *18 the decision in that case cannot be regarded as authority for Chrysler's position in the instant suit, i. e., that its reimbursement by the Federal government for all taxes it paid to the city prior to the institution of this suit for a refund did not divest it of the right of action it normally would have had but for such reimbursement.
Indeed, the position of Chrysler in this case is indistinguishable in principle from that of plaintiff, Ritsch Alluvial Land Company, in Ritsch Alluvial Land Co. et al. v. Adema et al., 211 La. 675, 30 So. 2d 753. In that matter, Ritsch and its vendee, Lenmark Lands, Inc., brought suit against the defendants to annul a tax sale of certain real property to the defendants in the year 1930 while Ritsch was the owner thereof. Before the suit was brought, however, Ritsch quitclaimed the land to the other plaintiff, Lenmark Lands, Inc. and agreed in the act of conveyance that, should it ever become necessary to prosecute any legal action with respect to the property conveyed, such legal action could be instituted in its name by its vendee. The defendants filed an exception of no right of action to the petition of Ritsch claiming that it was without interest to maintain and prosecute the suit. This exception was sustained below, the judge holding that Ritsch had no interest in the litigation which would satisfy the requirements of Article 15 of the Code of Practice. In affirming this ruling on appeal the Court, in an opinion by the late Chief Justice O'Niell, stated:
"If the Ritsch Alluvial Land Company had refused to permit the use of its name by the Lenmark Lands, Inc., the Ritsch Alluvial Land Company thereby would have violated its contractual obligation; but the mere passive action required of the Ritsch Alluvial Company by the contract, i. e., to permit its name to be used by Lenmark Lands, Inc., did not create in the Ritsch Alluvial Land Company an interest in the subject matter of the litigation. To sustain this contention of the plaintiffs would render Article 15 of the Code of Practice meaningless."
So, in the case at bar, the circumstance that Chrysler agreed with the United States to prosecute this suit does not vest it with an interest in the litigationfor, having already been reimbursed for the taxes it had paid under protest and having agreed that any amount recovered by it would be turned over to the United States, it had nothing to recoup by the suit nor does its failure to recover affect it adversely in any manner.
We have examined the other contentions raised by applicants in their petition and find no merit in them.
The application for a rehearing is refused.
HAMITER and SUMMERS, JJ., dissented from the refusal to grant a rehearing.
NOTES
[1] Plaintiff suggests that this exception has been previously ruled upon by this Court in the form of an exception of no right of action. An examination of our previous decision in this case discloses that only the question of whether the petition stated a cause of action was considered. See Chrysler Corporation v. City of New Orleans, 238 La. 123, 114 So.2d 579.
[2] Section 15(a) Ordinance 15, 201 C.C.S.; Krauss Company v. Develle, 236 La. 1072, 110 So.2d 104; cf. Article 15, Louisiana Code of Practice; Succession of Alstock, 230 La. 167, 88 So.2d 14; Interdiction of Maestri, 213 La. 313, 34 So.2d 790; Losavio v. Losavio Realty Co., 212 La. 23, 31 So.2d 412; Ideal Savings & Homestead Ass'n v. Scott, 181 La. 978, 160 So. 783; Waterhouse v. Star Land Co., Ltd., 139 La. 177, 71 So. 358; Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661; Succession of Vicknair, La.App., 126 So. 2d 680; Orr v. Walker, La.App., 104 So. 2d 226; 39 American Jurisprudence Parties § 10, pp. 859-860; 11 TLR 527.
[3] The suit, intervention, and exception of want of interest in the instant case were filed prior to the adoption of the Louisiana Code of Civil Procedure enacted by Act No. 15 of 1960. Compare Article 1039, LSA-C.C.P. relative to voluntary dismissals on motion of plaintiff.
[1] In our original opinion in this matter it was inadvertently stated that, in the Bel case, this Court "* * * maintained Bel's right to bring suit for a refund * * *". And we further attempted to distinguish the Bel case, erroneously we now think, on the premise that, since the Ordinance in this case imposed the use tax on the owner of the property, which was the United States and not Chrysler, the cases were different. Actually, the Bel case is inapplicable here because Bel's right to maintain the action was never questioned nor passed on. (See also Bel Oil Corporation v. Roland, 242 La. 498, 137 So.2d 308.)